APRIL L. HOLLINGSWORTH (Bar No. 9391)
KATIE PANZER (Bar No. 16919)
**HOLLINGSWORTH LAW OFFICE, LLC**
1881 South 1100 East
Salt Lake City, Utah 84105
Telephone: (801)415-9909
Facsimile: (801) 303-7324
april@aprilhollingsworthlaw.com
katie@aprilhollingsworthlaw.com

Camille Fundora Rodriguez*
Alexandra K. Piazza*
Michael J. Anderson*
BERGER MONTAGUE PC
1818 Market Street, Suite 3600
Philadelphia, PA 19103
Tel.: (215) 875-3000
Fax: (215) 875-4604
crodriguez@bm.net
apiazza@bm.net
manderson@bm.net

\* *Pro Hac Vice Forthcoming*

*Attorneys for Plaintiff and the Proposed Collective*

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH
## NORTHERN DIVISION

| | |
|---|---|
| **HEATHER MADSEN, individually and on behalf of all persons similarly situated,**<br><br>**Plaintiff,**<br><br>v.<br><br>**SIDWELL AIR FREIGHT, INC, and DHL EXPRESS (USA) INC., d/b/a DHL EXPRESS,**<br><br>**Defendants.** | **COLLECTIVE ACTION COMPLAINT**<br><br>**(JURY DEMANDED)**<br><br>Civil No.:<br><br>Judge: |

## COLLECTIVE ACTION COMPLAINT

Plaintiff Heather Madsen ("Plaintiff"), through her undersigned counsel, individually, and on behalf of all persons similarly situated, files this Collective Action Complaint ("Complaint") against Defendants Sidwell Air Freight ("Sidwell") and DHL Express (USA) Inc. d.b.a. DHL Express ("DHL") (collectively, "Defendants") seeking all available remedies under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201, *et seq*. The following allegations are based on personal knowledge as to Plaintiff's own conduct and are made on information and belief as to the acts of others.

### INTRODUCTION

1. Defendant Sidwell provides last-mile delivery services to Defendant DHL.

2. Defendants jointly employ non-exempt Courier Drivers, such as Plaintiff and members of the proposed Collective, to transport packages from DHL's facilities to DHL's customers ("Courier Drivers").

3. This case is about Defendants' failure to comply with applicable wage and hour laws and to pay non-exempt Courier Drivers all wages owed—including overtime—for work performed in delivering hundreds of DHL packages each day and meeting DHL's delivery needs throughout Utah and other states.

### JURISDICTION AND VENUE

4. This action arises under the FLSA, 29 U.S.C. §§ 201-219. As a federal law claim, the Court has original jurisdiction to hear this complaint and to adjudicate the claims stated herein pursuant to 28 U.S.C. § 1331.

5. Venue in this Court is proper pursuant to 28 U.S.C. § 1391. Defendants reside, maintain offices, and/or conduct business in this Judicial District, and a substantial part of the

events or omissions giving rise to Plaintiff's claims occurred within this Judicial District.

## PARTIES

6. Plaintiff Heather Madsen is a citizen of Utah. Plaintiff worked for Defendants as a Courier Driver in Utah from June 2021 to December 2022. Pursuant to 29 U.S.C. § 216(b), Plaintiff has consented to be a plaintiff in this action. *See* Ex. A.

7. Defendant Sidwell Air Freight ("Sidwell") is a corporation headquartered at 256 N. State St. C, Morgan, UT 84050. Sidwell operates throughout the United States and maintains facilities across Utah, including within this Judicial District.

8. Defendant DHL Express (USA) Inc. d.b.a. DHL Express ("DHL") is an Ohio corporation and is headquartered at DHL's corporate office located at 1210 S. Pine Island Rd. Suite 400, Plantation, FL. DHL operates throughout the United States and maintains facilities across Utah, including within this Judicial District.

9. The unlawful acts alleged in this Complaint were committed by Defendants and/or Defendants' officers, agents, employees, or representatives, while actively engaged in the management of Defendants' businesses or affairs and with the authorization of the Defendants.

10. During times relevant, Plaintiff was an employee of the Defendants and was covered by the FLSA.

11. Each Defendant is an employer covered by the FLSA.

12. Defendants employ individuals, including Courier Drivers, in Utah and other states.

13. Defendants employ individuals engaged in commerce or in the production of goods for commerce and/or handling, selling, or otherwise working on goods or materials that have been moved in or produced in commerce by any person, as described by 29 U.S.C. §§ 206-207.

14. Defendants' annual gross volume of sales exceeds $500,000.

## COLLECTIVE DEFINITION

15. Plaintiff brings Counts I of this lawsuit pursuant to the FLSA, 29 U.S.C. § 216(b), as a collective action, individually, and on behalf of the following collective:

> All current and former Courier Drivers or delivery drivers who were paid by Defendant Sidwell to perform work on behalf of DHL in the United States during the applicable limitations period (the "FLSA Collective").

16. Plaintiff reserves the right to redefine the FLSA Collective before notice or certification, and thereafter, as may be warranted or necessary.

## FACTS

### Defendants Are Joint Employers

17. Defendant DHL is the world's leading delivery company, with a team of shipping professionals that transport goods to customers across the United States, as well as in other countries and territories, in a short period of time.

18. Defendant DHL holds itself out as a company able to provide domestic and international parcel pickup, delivery, and return solutions for business customers and individual customers, as well as e-commerce solutions and facilitation services.

19. Defendant DHL and the local and regional delivery vendors it partners with, such as Defendant Sidwell, are in the business of delivering goods across the United States.

20. Defendant DHL utilizes local and regional delivery vendors, such as Sidwell, to transport goods across the country to customers in a short period of time.

21. Defendant DHL relies on local and regional delivery vendors, such as Sidwell, for the essential services of transporting goods from DHL facilities to customers' doors as quickly as possible.

22. The local and regional delivery vendors, such as Sidwell, are an integral part of

DHL's business. Without the use of delivery vendors, such as Sidwell, DHL could not get their goods to customers.

23. Defendant DHL attempts to shield itself from liability by utilizing third-party delivery vendors, such as Sidwell, to provide the employees to transport their goods.

24. Defendant Sidwell provides delivery services for Defendant DHL at one or more of DHL's "ServicePoint" locations—facilities where packages are picked up for delivery—through the use of Courier Drivers such as Plaintiff and members of the proposed Collective.

25. Courier Drivers are engaged to fulfill DHL's delivery needs and to transport goods from DHL ServicePoint locations to DHL customers.

26. Courier Drivers work in the transportation industry.

27. As required by DHL, Sidwell provides Courier Drivers, such as Plaintiff and other Courier Drivers, with a DHL-branded vehicle.

28. Plaintiff worked as a Courier Driver for Sidwell from June 22, 2021 until December 2022, making deliveries on behalf of DHL, in Utah.

29. The goods that Courier Drivers transport from DHL ServicePoint locations to DHL customers originate, or are transformed into their final condition, in a different state than the delivery state.

30. The goods the Courier Drivers transport from DHL ServicePoint locations to DHL customers are not transformed or modified during the shipping process.

31. Courier Drivers deliver goods to DHL customers in the same condition as when they were shipped to the DHL ServicePoint.

32. Courier Drivers deliver goods to DHL customers that were shipped from around the United States.

33. Courier Drivers handle goods that travel interstate.

34. Courier Drivers are directly responsible for transporting goods in interstate commerce.

35. Courier Drivers operate vehicles in order to deliver DHL packages, which is vital to the commercial enterprise of the local and regional delivery vendors and DHL.

36. A strike by Courier Drivers would disrupt interstate commerce.

37. Plaintiff and other Courier Drivers are necessary in order for DHL goods traveling interstate to make it to their final destination—DHL customers.

38. At all times relevant, DHL has been affiliated with and/or operating with Sidwell, with respect to Plaintiff and other similarly situated employees, such that DHL and Sidwell are "joint employers" of Plaintiff and other similarly situated employees.

39. Courier Drivers for the local and regional delivery vendors, including Sidwell, are required to wear DHL-branded uniforms while making deliveries and are further equipped with DHL-branded badges.

40. When Courier Drivers present themselves to DHL customers, they are identifiable as DHL associates.

41. Courier Drivers are provided with a DHL-issued handheld scanner. The handheld scanner is used for navigation assistance, package scanning, and as a phone. The scanner allows DHL to contact and track a Courier Driver's movement and work progress.

42. DHL has direct access to the handheld scanners, which are given to and used by each Courier Driver.

43. DHL assigns and provides routes to local and regional delivery vendors, including Sidwell.

44. DHL oversees and controls the work activities, work schedules, conditions and management of Courier Drivers.

45. Throughout their employment with Defendants, Courier Drivers are required to comply with DHL's operational procedures meet DHL's work expectations.

46. DHL's policies and expectations regarding payment and delivery goals dictated the delivery vendors' ability to pay Courier Drivers properly for their overtime work.

## The Nature of Plaintiff's and Other Courier Drivers' Work

47. The nature of the work performed by Courier Drivers is similar and standardized at each of the DHL ServicePoints where Sidwell provides services for DHL, as the nature of the work is centrally controlled and directed by Defendants.

48. At all times during the relevant period, Plaintiff began her shift by driving to the hub/warehouse where she picked up a handheld scanning device. Then, she would sort through the packages that came off the plane and load up her DHL Van.

49. At all times during the relevant period, Plaintiff and other Courier Drivers have been regularly required to begin their shifts between approximately 6:00 am and 8:00 am on weekday mornings.

50. At all times during the relevant period, Plaintiff and other Courier Drivers have been regularly scheduled to work five or more days per week, with shifts that exceed ten hours in length.

51. Upon information and belief, Plaintiff and other Courier Drivers have been required to complete all assigned routes regardless of the length of their shifts.

52. Upon information and belief, all of the work-related activities that Plaintiff and other Courier Drivers have been required to and do perform often takes ten to almost thirteen hours

7

per day to complete.

53. Plaintiff has regularly worked in excess of ten hours each workday, sometimes as much as almost thirteen hours per workday. Plaintiff has observed that other Courier Drivers have routinely worked similar hours.

54. Plaintiff regularly worked in excess of forty hours per week. Plaintiff observed that other Courier Drivers have routinely worked similar hours.

55. Defendants unilaterally select the parcels and the quantity to be delivered. Plaintiff and other Courier Drivers cannot reject delivery assignments.

56. Due to the volume of work, Plaintiff was unable to take rest breaks and routinely missed meal breaks as well. The missed rest and meal breaks resulted in unpaid off-the-clock work. Plaintiff has observed that other Courier Drivers routinely work through their rest breaks and meal period and work off-the-clock.

57. Defendants have failed to provide Plaintiff and other Courier Drivers with a thirty-minute meal break for every five hours worked and have failed to ensure that Plaintiff and Courier Drivers took or are taking all their meal breaks.

58. Plaintiff and other Courier Drivers are non-exempt for overtime purposes.

### **Defendants Failed to Pay Courier Drivers Properly**

59. Plaintiff and other Courier Drivers have regularly worked more than forty hours per week.

60. Plaintiff and other Courier Drivers have regularly worked five or more days per week and ten or more hours per day.

61. Defendants have been aware that Plaintiff and other Courier Drivers regularly work more than forty hours per week.

62. Defendants have not properly compensated Plaintiff and other Courier Drivers for all hours worked.

63. Plaintiff and other Courier Drivers were not paid for all hours worked in excess of forty hours in a workweek and have not paid proper overtime premiums.

64. Courier Drivers are paid a fixed amount per day, without regard to the number of hours that Courier Drivers worked, and regularly are not paid overtime premiums for all hours worked in excess of forty in a workweek.

65. Plaintiff regularly worked approximately fifty to fifty-five hours per week.

66. Sidwell refers to its flat-rate wage payments as being split into a "Daily Wage" rate and a "Daily Wage Overtime" rate.

67. Sidwell's framing of "Daily Wage" and "Daily Wage Overtime" payments as being split into a regular flat rate per day and an overtime flat rate per day is a willful attempt to circumvent the FLSA and applicable state law.

68. Plaintiff was paid a flat Daily Wage of $150 per day and flat Daily Wage Overtime of $165 to $200, and she was not paid an overtime premium despite regularly working more than forty hours per week. Plaintiff observed other Courier Drivers receive similar pay structure.

69. Plaintiff also received an additional quarter of her Daily Wage if she took additional stops for her route. The extra pay did not take into account the actual hours worked.

70. Defendants have paid and do pay Courier Drivers, such as Plaintiff, pursuant to the same unlawful flat-rate pay policy, without paying overtime premiums for all hours of work performed in excess of forty hours per workweek.

71. Defendants' unlawful flat-rate policy, in which Plaintiff and other Courier Drivers are not compensated for all time worked and are not paid overtime premiums for all hours worked

in excess of forty per workweek, does not comply with the requirements of the FLSA and applicable state law.

72. Defendants have not accurately recorded and tracked all of the hours worked by Plaintiff and other Courier Drivers and therefore have failed to compensate Plaintiff and the proposed collective action members at one and one-half times the regular rate of pay for hours worked over forty hours in a week.

73. In addition, Defendants have failed to make, keep, and preserve records with respect to Plaintiff and other Courier Drivers sufficient to determine their lawful wages, actual hours worked, and other conditions of employment as required by federal and state law. *See* 29 U.S.C. § 211(c); 29 C.F.R. §§ 516.5(a), 516.6(a)(1), 516.2(c) (requiring employers to maintain payroll records for three years and time sheets for two years, including the exact number of hours worked each day and each week).

### The Failure to Properly Pay Courier Drivers Is Willful

74. Defendants' actions in violation of the FLSA were or are made willfully in an effort to avoid liability under the FLSA.

75. Even though the FLSA and applicable state law requires overtime premium compensation for hours worked over forty hours per week, Defendants did not and do not pay Courier Drivers, such as Plaintiff, proper overtime compensation for overtime hours worked.

76. Defendants know, or absent their own recklessness should have known, that the Courier Drivers are or were entitled to such overtime premiums.

77. Defendants have failed to pay Plaintiff and other Courier Drivers all overtime compensation owed.

78. By failing to pay all the compensation owed to Plaintiff and other Courier Drivers,

Defendants have acted willfully and with reckless disregard of clearly applicable FLSA provisions.

79. Defendants have not made good-faith efforts to comply with the FLSA and applicable state law.

## COLLECTIVE ACTION ALLEGATIONS UNDER THE FLSA

80. Plaintiff brings this lawsuit pursuant to 29 U.S.C. § 216(b) as a collective action on behalf of the FLSA Collective defined above.

81. Plaintiff desires to pursue her FLSA claims on behalf of any individuals who opt-in to this action pursuant to 29 U.S.C. § 216(b).

82. Plaintiff and the FLSA Collective are "similarly situated," as that term is used in 29 U.S.C. § 216(b), because, *inter alia*, all such individuals worked pursuant to Defendants' previously described common pay practices and, as a result of such practices, were not paid for all hours worked and were not paid the full and legally mandated overtime premium for hours worked over forty during the workweek. Resolution of this action requires inquiry into common facts, including, *inter alia*, Defendants' common compensation, timekeeping, and payroll practices.

83. Specifically, Defendants have failed to compensate Plaintiff for all hours worked and have failed to pay overtime at one-and-a-half times the employee's regular rate as required by the FLSA for hours worked in excess of forty per workweek.

84. The similarly situated employees are known to Defendants and are readily identifiable and may be located through Defendants' business records and the records of any payroll companies Defendants use.

85. Defendants employ many FLSA Collective Members throughout Utah and other states. These similarly situated employees may be readily notified of the instant litigation through direct means, such as U.S. mail and/or other appropriate means, and should be allowed to opt into

it pursuant to 29 U.S.C. § 216(b), for the purpose of collectively adjudicating their similar claims for overtime and other compensation violations, liquidated damages (or, alternatively, interest), and attorneys' fees and costs under the FLSA.

### COUNT I
### Violation of the Fair Labor Standards Act
### (On Behalf of Plaintiff and the FLSA Collective)

86. Plaintiff restates and incorporates by reference the above paragraphs.

87. Under 29 U.S.C. § 216(b), Plaintiff brings this count on behalf of herself and the FLSA Collective.

88. Because they were hired, paid, and had their work controlled by Defendants, Plaintiff and members of the FLSA Collective each qualify as an "employee" under 29 U.S.C. § 203(e)(1).

89. Based on their business operations in package delivery, Defendants are each an "employer" engaged in interstate commerce under 29 U.S.C. § 203(d).

90. At all relevant times, as part of Defendants' business operations, Plaintiff and members of the FLSA Collective were engaged in interstate commerce and/or in the production of goods for commerce under 29 U.S.C. § 207(a).

91. 29 U.S.C. § 207 requires employers to pay non-exempt employees one and one-half times the regular rate of pay for all hours worked over forty hours per workweek.

92. Plaintiff and Collective Members are not exempt from the requirements of the FLSA.

93. As employers of Plaintiff and the FLSA Collective, Defendants suffered and permitted Plaintiff and members of the FLSA Collective to work more than forty hours per workweek within the statutory period without paying them overtime compensation required by 29

U.S.C. § 207(a)(1) and 29 C.F.R. § 778.112.

94. Defendants' actions, policies, and practices described above violated the FLSA's overtime requirement because Defendants regularly and repeatedly failed to pay required overtime compensation to Plaintiff and members of the FLSA Collective.

95. Defendants also failed to create, keep, and preserve accurate records with respect to work performed by the Plaintiff and Collective Members sufficient to determine their wages, hours, and other conditions of employment in violation of the FLSA, 29 U.S.C. § 211(c); 29 C.F.R. §§ 516.5(a), 516.6(a)(1), 516.2(c).

96. In violating the FLSA, Defendants acted willfully and with reckless disregard of clearly applicable FLSA provisions.

97. As the direct and proximate result of Defendants' unlawful conduct, Plaintiff and members of the FLSA Collective have suffered damages. Plaintiff and the FLSA Collective are entitled to recover actual damages, liquidated damages, prejudgment interest, attorneys' fees, and costs under 29 U.S.C. § 216(b).

98. Defendants are liable under the FLSA for failing to properly compensate Plaintiff and members of the FLSA Collective. As a result, notice should be sent to the FLSA Collective. There are many similarly situated current and former employees of Defendants who have suffered from Defendants' practice of denying overtime pay and who would benefit from the issuance of court-supervised notice of this lawsuit and the opportunity to join. Those similarly situated employees are known to Defendants and are readily identifiable through Defendants' records.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff seeks the following relief on behalf of themselves and all others similarly situated:

a. An order permitting this litigation to proceed as an FLSA collective action pursuant to 29 U.S.C. § 216(b);

b. Prompt notice, pursuant to 29 U.S.C. § 216(b), of this litigation to all potential FLSA Collective members;

c. For unpaid wages as may be owed and prejudgment interest to the fullest extent permitted under the law;

d. Liquidated and exemplary damages to the fullest extent permitted under the law;

e. Litigation costs, expenses and attorneys' fees to the fullest extent permitted under the law; and

f. Such other and further relief as this Court deems just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury for all issues of fact.

Dated: January 26, 2023

Respectfully submitted,

/s/ April L. Hollingsworth
APRIL L. HOLLINGSWORTH (Bar No. 9391)
KATIE PANZER (Bar No. 16919)
**HOLLINGSWORTH LAW OFFICE, LLC**
1881 South 1100 East
Salt Lake City, Utah 84105
Telephone: (801)415-9909
Facsimile: (801) 303-7324
april@aprilhollingsworthlaw.com
katie@aprilhollingsworthlaw.com

Camille Fundora Rodriguez
Alexandra K. Piazza
Michael J. Anderson
**BERGER MONTAGUE PC**
1818 Market Street, Suite 3600
Philadelphia, PA 19103
Telephone: (215) 875-3000
Facsimile: (215) 875-4604
crodriguez@bm.net
apiazza@bm.net
manderson@bm.net

*Attorneys for Plaintiff and the Proposed Collective*