## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH, NORTHERN DIVISION

| | |
|---|---|
| HEATHER MADSEN, individually and on behalf of all persons similarly situated,<br><br>     Plaintiff,<br><br>v.<br><br>SIDWELL AIR FREIGHT, DHL EXPRESS (USA) INC., d/b/a DHL EXPRESS<br><br>     Defendants. | **MEMORANDUM DECISION AND ORDER ON PLAINTIFF'S MOTION FOR CONDITIONAL CERTIFICATION**<br><br>Case No. 1:23-cv-0008-JNP<br><br>Hon. Jill N. Parrish |

Before the Court is Plaintiff's Motion for Conditional Certification of a collective action under the Fair Labor Standards Act ("FLSA") and approval of her proposed notice. [*See* ECF 29.] A hearing on Plaintiff's Motion was held on August 11, 2023. Michael J. Anderson and Mariyam Hussain appeared for Plaintiff Heather Madsen; Randall K. Edwards and Jeanne D. Marshall appeared for Defendant Sidwell Air Freight; and Linda C. Schoonmaker appeared for Defendant DHL Express (USA) Inc.

Although the Court had noticed a hearing for further consideration on Plaintiff's Motion, the Court now finds that such a hearing is no longer necessary. The Court, having reviewed the Motion briefs and the supplemental briefing on

consent-based jurisdiction submitted by the parties, and for reasons discussed more fully below, hereby GRANTS IN PART Plaintiff's Motion.

<u>BACKGROUND</u>

Plaintiff Heather Madsen is a courier driver for Defendant Sidwell Air Freight operating out of the Salt Lake City International Airport.  Plaintiff alleges that Sidwell provides what is known as "last-mile delivery services" for Defendant DHL in Utah.  She further alleges that Sidwell provides these same services for DHL in several other states, including Arizona, Idaho, New Mexico, Ohio, Oregon, Texas, and Washington.  Plaintiff claims that she and other similarly situated drivers have not been paid overtime wages.

Specifically, Plaintiff asserts that all drivers for Sidwell are paid a uniform flat day rate, regardless of the actual hours they work, and that as a courier driver she (along with her fellow drivers) was regularly scheduled to work five days or more a week, with each shift entailing ten hours or more.  Plaintiff asserts that this pay scheme violates the FLSA and she seeks conditional certification for all others working for Sidwell as a courier driver for DHL wherever located.  She has alleged that other employees are similarly situated because they have similar job duties and schedules, were paid under the same flat day rate compensation policies, worked more than 40 hours per week, and did not receive appropriate overtime pay. She has supported her allegations with declarations and evidence of job postings. [*See* ECF 2.]

<u>DISCUSSION</u>

The FLSA authorizes a plaintiff to bring a "collective action" for overtime wages on behalf of "other employees similarly situated."  29 U.S.C. § 216(b). Unlike in a class action under Federal Rule of Civil Procedure 23, parties are added to and bound by a FLSA collective action on an "opt-in" rather than "opt-out" basis.  This requires the sending of an accurate and timely notice concerning the pendency of the action so that other "similarly situated" employees can make an informed decision about whether to join.

Courts within the Tenth Circuit have applied a two-step approach in determining if a collective action may be conditionally certified so that notice may issue.  *See Thiessen v. Gen. Elec. Cap. Corp.*, 267 F.3d 1095, 1105 (10th Cir. 2001); *Lewis v. eAssist, Inc.*, No. 2:22-cv-121, 2022 WL 1224978, at *2 (D. Utah Apr. 26, 2022); *Kovacs v. G4S Secure Sols. (USA) Inc.*, No. 20-CV-3180, 2022 WL 1402097, at *2 (D. Colo. Jan. 18, 2022); *see also James v. Boyd Gaming Corp.*, 522 F. Supp. 3d 892, 901 (D. Kan. 2021) (noting "the Tenth Circuit has approved a two-step approach for determining whether plaintiffs in a proposed opt-in collective action are 'similarly situated'"); *Deakin v. Magellan Health, Inc.*, 328 F.R.D. 427, 431 (D.N.M. 2018) (noting that "this Court and many district courts in the Tenth Circuit apply the two-step" approach).

First, courts apply a lenient standard to determine "whether the plaintiff has asserted substantial allegations that the putative class members were together victims of a single decision, policy, or plan," such that sending notice is appropriate.

*See Kovacs,* 2022 WL 1402097, at *2 (cleaned up). The lenient standard is applied

because it recognizes that plaintiffs have been unable to conduct discovery. *See*

*Pack v. Investools, Inc.,* No. 2:09-cv-1042, 2011 WL 3651135, at *2 (D. Utah Aug. 18,

2011) (recognizing this rationale). Then, after notice and discovery, the Court

"applies a stricter standard to determine whether the action should continue as a

collective action." *Id.* The Defendants concede that this is the approach that has

been taken within the Tenth Circuit. [*See* ECF No. 31, at 4.]

    *1. Conditional Certification*

        A. Whether any Conditional Certification or Notice Should be
           Approved Before There is More Discovery

The main opposition offered by Defendants to conditional certification is their

argument that the Court should reject the two-step approach and adopt an

approach used in *Swales v. KLLM Transp. Servs, L.L.C.,* 985 F.3d 430, 436–43 (5th

Cir. 2012). In *Swales*, the court concluded that the two-step approach frustrates the

FLSA notice process because: (1) the process of conditional certification is not

consistently applied and the standards vary from case to case leaving "no clue" as to

what kinds of similarity matter; and (2) the conditional certification approach is

nowhere mentioned in the text of the FLSA. *See id.* *Swales* suggests that district

courts should require more proof of whether employees may be "similarly situated"

before allowing notice to be sent. Essentially, the *Swales* approach rejects the

lenient standard of the two-step approach in favor of a more rigorous factual

analysis that demands that some discovery be conducted before determining if a

plaintiff and others are "similarly situated" so that notice may be permissible. At

bottom, the *Swales* court seemed concerned that the two-step approach, with its lenient standard on notice, "stirred up" litigation.  *See id*. at 441.[1]

Plaintiff, however, correctly points out that the district courts in the Tenth Circuit have uniformly rejected the *Swales* approach.  *See, e.g., Green v. Perry's Restaurants Ltd*, No. 21-cv-0023, 2022 WL 16744795, at *4 n.4 (D. Colo. Nov. 7, 2022) ("To the extent Defendants argue that the Court should follow the Fifth Circuit's approach in *Swales* . . . the Court declines to do so, as *Swales* is not binding Supreme Court or Tenth Circuit authority, nor does the Court find persuasive the reasoning of that decision."); *Spencer v. Mental Health Res., Inc.*, No. 1:21-cv-121, 2022 WL 3031839, at *3 (D.N.M. Aug. 1, 2022) (declining to adopt *Swales* and granting conditional certification).  Plaintiff also identifies 38 other district court opinions outside the Tenth Circuit that have also rejected *Swales*.  One of those decisions is *Roberts v. Sidwell Air Freight Inc.*, No. C21-5912, 2022 WL 16949565 (W.D. Wash. Nov. 15, 2022).

In *Roberts*, the court granted a similar motion for conditional certification in an action containing nearly identical allegations against Sidwell and DHL, but only for drivers within the State of Washington.  The court addressed almost all the arguments presented for and against conditional certification that have been

---

[1]     Factually *Swales* is very different from this case.  In *Swales* the parties had already engaged in extensive discovery before seeking conditional certification and notice.  At least according to the *Swales* court, that discovery suggested that the plaintiff and others might not be "similarly situated" under the economic realities test as to who was their employer.  Given that, the court noted that sending notice to parties who might be ineligible to participate "merely stirs up litigation."  *Swales*, 985 F.3d at 441.  No such discovery has been conducted here.

presented here and concluded that Sidwell's courier drivers in Washington were "similarly situated" for purposes of the FLSA and ruled in favor of certification for drivers in the State of Washington. *See id.* at *2–4, *7–9.

Among other things, the court in *Roberts* also concluded that the two-step approach, which is effectively a "plausibility-like standard" for conditional certification is more appropriate as it allows the court to "monitor and approve" the notice sent out, while allowing the court to remain "neutral on the merits." 2022 WL 1649565, at *3–4.[2]   This Court agrees with the court's analysis in *Roberts*, and it will continue to adhere to the two-step approach that has been approved by the Tenth Circuit and used throughout this Circuit and elsewhere.

### B.  Has Plaintiff Sufficiently Asserted That Other Putative Class Members Are Similarly Situated

As noted above, Plaintiff, a Utah resident who worked for Sidwell in Utah, asserts that she and all drivers for Sidwell as courier drivers for DHL are paid a uniform flat day rate, regardless of the actual hours they work, and that as a courier driver she and her fellow drivers were regularly scheduled to work five days or more a week, with each shift entailing ten hours or more, and are similarly expected to complete all routes for a daily wage. [*See* ECF No. 2 ¶¶ 49–64, 70, 72–73; *see also* ECF No. 29-6 at ¶¶ 5–10, 16–18, 22, 24.]  Likewise, opt-in plaintiff Roscoe Shorey, a resident of Vancouver, Washington, who worked for Sidwell as a courier driver for DHL in Washington and in Portland Oregon, submitted a

---

[2]     The Defendants do not attempt to distinguish *Roberts*, which they admit is "identical" to this action. [*See* ECF 31 at 11.]

declaration in support of Plaintiff's motion that presents comparable assertions. [*See* ECF No. 29-7 at ¶¶ 2–5, 8–11, 18–20, 24.]  And in further support, Plaintiff submitted job postings from Sidwell for courier driver positions in Arizona, Idaho, Ohio, Oregon, Texas, and Utah—all of which describe the positions and pay in a similar manner.  [*See* ECF No. 29-5.]

Notably, the court in *Roberts*, looking at nearly the same factual assertions and analyzing the same arguments Sidwell raises here, concluded that courier drivers employed by Sidwell in Washington were "similarly situated" for purposes of the FLSA.  *See Roberts*, 2022 WL 1649565 at *9 (concluding that plaintiff plausibly supported his argument that other Sidwell drivers are similarly situated through his allegations, his motion, in supporting declarations, and job postings that indicated that all Sidwell courier drivers in Washington had the same working conditions, the same job descriptions, and were expected to complete all routes for a daily wage regardless of how long it took).

At least insofar as it concerns Sidwell's courier drivers in Utah and Oregon, this Court agrees with the court's analysis in *Roberts* and concludes that Plaintiff has, through her allegations, the submitted declarations, and the job postings, plausibly asserted substantial allegations that putative class members in Utah and Oregon were victims of a uniform policy so that they meet the similarly situated standard for conditional certification.

The answer is different, however, for Sidwell courier drivers in Arizona, Idaho, New Mexico, Ohio, and Texas.  Nowhere in Plaintiff's complaint or in the

supporting declarations are there any specific assertions as to the working conditions for Sidwell's courier drivers in those states. And while the job postings describe Sidwell's courier driver positions in a comparable manner,[3] and show a daily rate of pay, rather than an hourly rate (which might suggest that overtime wages were not available, *see Roberts*, 2022 WL 16949565, at *9), they otherwise lack any detail or firsthand knowledge that would plausibly support a conclusion that drivers in these states were subject to the same uniform policies concerning overtime wages and are similarly situated to Sidwell's employees in Utah and Oregon, who worked as courier drivers for DHL. As a result, the Court lacks a sufficient factual basis for concluding that conditional certification would also be appropriate for drivers who worked in Arizona, Idaho, New Mexico, Ohio, and Texas.[4] *See, e.g., Bowling v. DaVita, Inc.*, No. 21-cv-03033, 2023 WL 4364140, at *7 (D. Colo. July 6, 2023) (concluding that plaintiff did not meet burden for nationwide conditional certification where there was no "factual allegations, beyond conclusory assertions, that would permit the Court to conclude that [plaintiff] has personal knowledge of the experiences of [defendant's] employees working in any other state"). *But see Deakin v. Magellan Health, Inc.*, 328 F.R.D. 427, 434 (D.N.M. 2018) (directing conditional certification of company-wide class where plaintiff submitted

---

[3]     No job posting was submitted concerning Sidwell courier driver positions in New Mexico.

[4]     Notably, none of these job postings describes the position as working as a courier driver for DHL. Further, none of the postings describe a ten-hour or more daily shift. In fact, one mentions an "8 hour shift" [*see* ECF No. 29-5 at 2] and the others do not identify any specific daily hours. [*See* ECF No. 29-5, at 14, 20, 26.]

declarations from employees in five different states in which they attested to personal knowledge of uniform, nationwide practices).  Thus, to the extent Plaintiff has sufficiently and substantially alleged that other Sidwell courier drivers are subjected to a uniform policy and are similarly situated, the Court concludes that she has only done so for persons employed in Utah and Oregon.

### C.  The Scope of the Collective Group and Jurisdiction Over Sidwell and DHL

Defendants argue that if conditional certification is granted and notice approved it should only reach potential collective members who work in Utah. Defendant DHL argues that the Court may not conditionally grant certification over the claims of any potential out-of-state opt-in plaintiffs, at least insofar as they are asserting claims against DHL, because the Court lacks jurisdiction over DHL for those claims.  Plaintiff, on the other hand, proposes a broader scope and seeks certification and notice to all similarly situated Sidwell/DHL courier drivers wherever they work.  Notably, in *Roberts* the court only approved notice to Sidwell and DHL drivers in Washington, finding that the court lacked jurisdiction over non-resident drivers in other states, including those in Utah.

In the last decade several Supreme Court cases have attempted to clarify personal jurisdiction.  In *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014), the Court held that general jurisdiction over corporate defendants, like Sidwell and DHL, is typically only found in two places: "the [corporation's] place of incorporation and principal place of business."  Here, Defendant, DHL is organized under the laws of the State of Ohio and maintains its principal place of business in Plantation,

Florida.  Thus, general jurisdiction would appear to be lacking over DHL in Utah. *See Daimler*, 571 U.S. at 137 & 139.

On the other hand, because Sidwell is a Utah corporation with its principal place of business in Utah,[5] the Court has general jurisdiction over Sidwell, so that its exercise of jurisdiction over all claims against Sidwell, even those brought by out-of-state opt-in plaintiffs, is permissible and would not offend due process.  *See id.*, 571 U.S. at 137.

### 1) Specific Jurisdiction over DHL

Whether there is specific jurisdiction over a non-resident defendant like DHL depends on the defendant's contacts and is claim specific.  *See, e.g., Bristol-Myers Squibb Co. v. Superior Court of California, San Francisco County*, 582 U.S. 255, 262 (2017) ("In order for a state court to exercise specific jurisdiction, the suit must arise out of or relate to the defendant's contacts with the forum.") (cleaned up).  The district court in *Roberts* reviewed this issue and the relevant authorities and determined that it would be inappropriate to conditionally certify an action for DHL and Sidwell employees who lacked contact with the State of Washington.  *See Roberts*, 2022 WL 16949565, at *5–6.  It concluded that because "*Bristol-Myers Squibb* applies to FLSA collective actions" the court must have personal jurisdiction over the defendants "as to each plaintiff's claims against them" and that "[p]otential opt-in plaintiffs who worked for DHL and Sidwell outside of Washington do not have claims 'related to' Defendants' contacts with this state."  *Id.*  Accordingly, the

---

[5]     *See* Sidwell's Answer [ECF No. 19] at 9.

district court denied conditional certification as to the out-of-state opt-in plaintiffs. *See id.* at *6.

The same result is warranted here, at least insofar as certification and notice concern DHL.  For while the Court has specific personal jurisdiction over DHL in connection with the named Plaintiff's claims because of specific Utah contacts (i.e., she resides in Utah, she delivered packages for DHL in Utah, and her claim for overtime wages arose in Utah), there has been no demonstration that any out-of-state opt-in plaintiffs' claims against DHL arise out of or relate to DHL's contacts in Utah.

Plaintiff has offered up two arguments against this result.  First, she argues that a First Circuit decision in *Waters v. Day & Zimmerman NPS, Inc.*, 23 F.4th 84, 92 (1st Cir. 2022), permits jurisdiction over the claims of out-of-state plaintiffs so long as the initial action commenced by the named plaintiff was properly served and there was personal jurisdiction over the claims of the named plaintiff.

Neither the Tenth Circuit nor any district court within the Tenth Circuit has addressed this new ruling in *Waters*.  But the Third, Sixth, and Eighth Circuits have all have rejected it.[6]  As stated by the Third Circuit in *Fischer v. Fed. Express*, "where the basis of personal jurisdiction in an FLSA collective action in a federal court is specific personal jurisdiction established by serving process according to Federal Rule of Civil Procedure 4(k)(1)(A), every plaintiff who seeks to opt in to the

---

[6]     *See Fischer v. Fed. Express Corp.*, 42 F.4th 366 (3d Cir. 2022); *Canaday v. Anthem Cos. Inc.*, 9 F.4th 392 (6th Cir. 2021); *Vallone v. CJS Sols. Group, LLC*, 9 F.4th 861 (8th Cir. 2021).

suit must demonstrate his or her claim arises out of or relates to the defendant's minimum contacts with the forum state." *Fischer v. Fed. Express Corp.*, 42 F.4th 366, 370 (3d Cir. 2022) (citing cases). As noted by the *Fischer* court, while opt-in plaintiffs do not need to serve the defendant anew upon opting in, jurisdiction is only maintained over the defendant when the claims of the opt-in plaintiffs arise out of the defendant's minimum contacts with the forum state. *See id.* at 384; *Roberts*, 2022 WL 16949565, at *5–6. No such minimum contacts between the out-of-state opt-in plaintiffs and DHL in Utah have been alleged here. Accordingly, this Court finds the analysis of the Third Circuit in *Fischer* and the district court in *Roberts* to be persuasive on this issue and therefore rejects the jurisdictional extension espoused by the First Circuit in *Waters*.

### 2) General Jurisdiction Over DHL Through Consent

Plaintiff argues that even if specific jurisdiction is not available over DHL, there is general jurisdiction over DHL because DHL is registered to transact business in Utah and has appointed an agent to accept service of process in Utah. For this argument, Plaintiff relies on the recent Supreme Court case of *Mallory v. Norfolk Southern Railway Co.*, 600 U.S. 122 (2023). In *Mallory*, a divided Supreme Court held that there was general jurisdiction in Pennsylvania over a non-resident corporate defendant, even in the absence of specific jurisdictional contacts with Pennsylvania relating to the plaintiff's negligence-based claim, because the defendant had "registered to do business" in Pennsylvania. The Court made it clear that a state may make the concession of general personal jurisdiction a condition of transacting business in the state. There was no doubt that such a condition was

present in Pennsylvania's statutes, which expressly state that "qualification as a foreign corporation" permits the state courts to "exercise general personal jurisdiction" over the corporation.  *See Mallory*, 600 U.S. at 134 (*quoting* 42 Pa. Cons. Stat. § 5301(a)(2)(i)).

Plaintiff claims that there are Utah statutes that have the same effect.  The first is Utah Code Ann. § 16-10a-1501(1), which provides that a foreign corporation, such as DHL, "may not transact business in this state until its application for authority to transact business is filed by the division."  DHL filed such an application.  Utah Code Ann. § 16-10a-1505(2) further states that "a foreign corporation authorized to transact business in this state is subject to the same duties, restrictions, penalties, and liabilities now or later imposed on a domestic corporation of like character."  And under Utah law a foreign corporation seeking authorization to do business in Utah must also designate a "registered agent" in Utah for the purposes of receiving service of process.  *See* Utah Code Ann. §§ 16-10a-1503(1)(e) & 16-17-203 ("Appointment of registered agent").  DHL has made such a designation.  Plaintiff argues that this statutory scheme, and DHL's compliance with it, establish general jurisdiction over DHL.

DHL, however, asserts that these statutes are different from those applied in *Mallory* because Utah's statutes contain no express statutory language establishing consent-by-registration.  Rather, DHL, argues that Utah law mandates just the opposite:  that registration does not constitute personal jurisdiction.  In fact, Utah Code Ann § 16-17-401 expressly provides that the "appointment or maintenance in

this state of a registered agent does not by itself create the basis for personal jurisdiction over the represented entity in this state."

To resolve this issue, a close examination of Utah's foreign corporation registration statutes, Utah's registration-related case law, and the consent-by-registration jurisprudence is required.

### (a) The Various and Inconsistent Views on Consent-by-Registration Jurisdiction

Several courts have looked at virtually identical statutory registration schemes as Utah's and have concluded that these statutes do not provide for general jurisdiction.  Many of these courts have held that the inclusion of a specific statute, such as Utah Code Ann. § 16-17-401, which expressly provides that "[t]he appointment or maintenance in this state of a registered agent does not by itself create the basis for personal jurisdiction over the represented entity in this state" precludes jurisdiction based on registration.[7]

For example, in *DeLeon v. BNSF Railway Co.*, 426 P.3d 1, 7, 9 (Mont. 2018), the Montana Supreme Court held that an identical statute acted to prohibit registration-based general jurisdiction.  It also noted that none of the other jurisdictions to enact this same statute, including Utah, had held that their registration statutes conferred general personal jurisdiction on a foreign

---

[7]    Twelve states, including Utah, have the same statutory provision.  *See, e.g.*, Ark. Code Ann. § 4-20-115; Haw. Rev. Stat. Ann. § 425r-12; Idaho Code Ann. § 30-21-414; Ind. Code Ann. § 23-0.5-4-12; Me. Stat. Tit. 5, § 115; Miss. Code. Ann. § 79-35-15; Mont. Code Ann. § 35-7-115; Nev. Rev. Stat. Ann. § 77.440; N.D. Cent. Code Ann. § 10-01.1-15; S.D. Codified Laws § 59-11-21; Utah Code Ann. § 16-17-401; and Wash. Rev. Code Ann. § 23.95.460.

corporation.  *Id*. at 7 n.1.  The Montana Supreme Court concluded that Montana's registration statutes, which are identical to Utah's, "clearly distinguish between service of process and the scope of personal jurisdiction" and that the limitation that registration does not by itself amount to jurisdiction "ensures that service of process and the scope of personal jurisdiction remain separate legal concepts."  *Id*. at 7. The court then noted that "[n]othing" in Montana's registration statutes "puts a corporation on notice that, by appointing a registered agent to receive service of process in Montana, it is consenting to general personal jurisdiction in Montana." *Id*.  Further, it noted that the statute also "explicitly tells corporations that they are *not* subject to personal jurisdiction" based solely on their appointment of a registered agent.  *Id*.

Similarly, in *Wise v. Wal-Mart Stores East, LP*, No. 4:18-cv-238, 2019 WL 3769624, *2 & n.6 (N.D. Miss. Aug. 9, 2019), the federal district court held that the enactment of Mississippi Code Ann. § 79-35-15, which provided that "the appointment or maintenance of a registered agent does not by itself create the basis for personal jurisdiction over the represented entity," made it unnecessary for the court to "resolve the continued viability of the consent-by-registration doctrine." The court reached this conclusion even though in *Est. of Jones v. Phillips*, 992 So. 2d 1131, 1138 n. 4 (Miss. 2008), the Mississippi Supreme Court had previously concluded that registration to do business in Mississippi did subject a non-resident corporation to jurisdiction in the state.  According to the court in *Wise*, the enactment of Mississippi Code Ann. § 79-35-15 in 2013, which is the same statute

as Utah Code Ann. § 16-17-401, changed the law to preclude a finding of consent. Accordingly, the court found that the defendant's registration to transact business in Mississippi did not "justify general jurisdiction." *Id.* at *2.  On November 16, 2023, the Supreme Court of Mississippi concluded that the *Wise* court's view on the preclusive power of this statute was "instructive," and that through its enactment of this statute the legislature made clear that it did not "intend[] to confer general personal jurisdiction through the business registration statutes." *K&C Logistics, LLC v. Old Dominion Freight Line, Inc.*, 374 So.3d. 515, 523–24 (Miss. Nov. 16, 2023).[8]

In the absence of such a limiting jurisdictional statute, some courts—both *pre*-and *post*-*Mallory*—have held that registration statutes that bear some similarity to Utah's can be interpreted to establish consent to general jurisdiction. In her brief and at oral argument, Plaintiff specifically cited to the post-*Mallory*

---

[8]    *See also Bralich v. Sullivan*, No. 17-00547, 2018 WL 1938297, at *4 (D. Haw. Apr. 23, 2018) (granting foreign corporation's motion to dismiss noting that there are no Hawaii registration statutes that expressly require such consent as a condition of registering to do business and that "Hawaii specifically provides that '[t]he appointment or maintenance of a registered agent in the State does not by itself create the basis for personal jurisdiction over the represented entity in the State'"); *McDowell v. United Parcel Serv., Inc.*, No. 4:22-cv-4028, 2022 WL 17543352, at *4 (W.D. Ark. Dec. 8, 2022) ("Further, even if a Moving Defendant is registered in Arkansas (as Plaintiffs allege), simply being registered in Arkansas does not render that defendant 'at home' in Arkansas such that it is subject to exercise of the Court's general personal jurisdiction. *See* Ark. Code Ann. § 4-20-115 (The appointment or maintenance in this state of a registered agent does not by itself create the basis for personal jurisdiction over the represented entity in this state.)") (cleaned up). Although the Delaware legislature had not enacted such a statute, the Delaware Supreme Court in *Genuine Parts Co. v. Cepec*, 137 A.3d 123, 144 & n.114 (Del. 2016), noted that such a statute, if enacted, "would help dispel any potential uncertainty on the part of foreign corporations as to the effect of complying with Delaware's registration statutes on personal jurisdiction."

decision in *In re Abbott Labs, Preterm Infant Nutrition Prod. Liab. Litig.,* No. 22-c-02011, 2023 WL 4976182, at *3 (N.D. Ill. Aug. 3, 2023), as support for her argument that this Court has general jurisdiction over DHL.

The court in *In re Abbott Labs* cited *Mallory* and concluded that defendant's registration to do business in Missouri amounted to consent to general jurisdiction. The court examined Missouri's foreign corporation registration statutes and determined that those statutes, which like Utah's, required a foreign corporation to obtain a "certificate of authority" that bestows on it "the same but no greater rights" and "the same but no greater privileges" and subjects the foreign corporation to "the same duties, restrictions, penalties, and liabilities now or later imposed on, a domestic corporation of like character," were sufficient to establish consent to general jurisdiction. *See id.* That the court reached this conclusion, despite a 2017 Missouri Supreme Court decision that held to the contrary, raised some issues as to the validity and persuasiveness of this decision.[9]  *Cf. State ex rel. Norfolk Southern Railway Company v. Dolan,* 512 S.W.3d 41, 52 & n.11 (Mo. 2017).

---

[9]      *In re Abbott Labs* was issued by a federal district court in the Northern District of Illinois and was construing Missouri registration statutes.  But the Missouri Supreme Court, sitting *en banc,* had in 2017 noted that its prior interpretation that these registration statutes implied consent to general jurisdiction for actions arising outside the state, including the court's prior interpretation that the Supreme Court affirmed as permissible under due process in the *Pennsylvania Fire Insurance Co. v. Gold Issue Mining & Milling Co.,* 243 U.S. 93 (1917), "should no longer be followed."  *See State ex rel. Norfolk Southern Railway Co. v. Dolan,* 512 S.W.3d 41, 52 & n.11 (Mo. 2017).

In *Dolan,* the Missouri Supreme Court noted that none of Missouri's registration statutes mentions consent to personal jurisdiction and that the plain language does not "purport to provide an independent basis for jurisdiction over foreign corporations that register in Missouri." *Id.* at 52.  Rather, the court held that these statutes merely provide "the type of service an agent for service of process can receive," noting that it is limited to process "required or permitted by law to be served on the foreign corporation." *Id.* The

More recently, however, on December 8, 2023, the *In re Abbott* court vacated its prior decision. *See In re Abbott Labs.*, No. 22-cv-2011, 2023 WL 8527415, at *4–5 (N.D. Ill. Dec. 8, 2023). The court concluded that its August 3, 2023 decision "was in error." *Id.* at *4. In vacating its prior ruling, the court acknowledged the Missouri Supreme Court's 2017 decision in *Dolan*—that Missouri's registration statutes do not confer general jurisdiction on registered foreign corporations (as discussed *supra* n.9)—"remains good law" and that *Mallory* does not change that interpretation. *Id.* at *5.

In *Skyline Trucking, Inc. v. Freightliner Truck Centercompanies*, No. 22-4052, 2023 WL 4846618, at *6 (D. Kan. July 28, 2023), a decision also cited by Plaintiff, the court confirmed there was general jurisdiction over a registered foreign corporation. The *Skyline* court noted that it was adhering to prior rulings, including a 2006 Kansas Supreme Court ruling, that previously held that a foreign corporation's registration to do business in Kansas confers general personal jurisdiction over it. *See id.*

But where a state has already expressed through judicial interpretation that its statutory registration scheme does not amount to consent to general jurisdiction, the post-*Mallory* decisions issued in those states have continued to affirm that registration does not give rise to general jurisdiction. *See, e.g., Lumen Techs. Serv.*

---

court then concluded that, although Missouri law permits service on resident defendants, and on a domestic corporation's agent for service of process, and Missouri's long-arm statute permits service on non-resident corporations for causes of action arising out of their activities in Missouri, none of these laws "provide that suit may be brought in Missouri against non-resident corporations for suits unrelated to the corporation's activities in this state." *Id.*

*Grp., LLC v. CEC Grp., LLC*, No 23-cv-253, 2023 WL 5822503, at \*6–8 (D. Colo.
Sept. 8, 2023) (concluding that Colorado's statutes do not give rise to general
jurisdiction because they do not "expressly inform foreign corporations of any
personal jurisdiction consequences of registering to do business or designating an
agent in the state" and because there is no state case law providing notice of
consent-by-registration); *Rosenwald v. Kimberly Clark Corp.*, No. 3:22-cv-04993,
2023 WL 5211625, at \*6 (N.D. Cal. Aug. 14, 2023) (noting that the holding in
*Mallory* is "not relevant to courts in California, because 'California does not require
corporations to consent to general personal jurisdiction in that state when they
designate an agent for service of process or register to do business'") (quoting *AM
Tr. v. UBS AG*, 681 F. App'x 587, 588–89 (9th Cir. 2017)); *Jastrjembskaia v.
incruises LLC,* No. 22-cv-61704, 2023 WL 5246817, at \*2 (S.D. Fla. Aug. 2, 2023)
(refusing to address *Mallory* where the "Eleventh Circuit has held that the text of
Florida's registration statute does not amount to consent to general jurisdiction")
(citing *Waite v. All Acquisition Corp.*, 901 F.3d 1307 (11th Cir. 2018) (holding
Florida law does not establish that foreign corporation's registration to do business
and appointment of agent in Florida amounts to consent to general jurisdiction)).

As the above recitation indicates, there is a lack of uniformity among the
states as to their consent-by-registration jurisprudence. States with statutes

similar[10] to Utah's registration statutes have found they amount to consent,[11] while

other states, reviewing virtually identical statues, have concluded otherwise.[12]   And

---

[10]     That these registration statutes bear some similarity should come as no surprise. Many, like Utah's, are modeled after the Model Registered Agents Act, the Uniform Business Organizations Code, and their predecessor model acts, which were drafted by the National Conference of Commissioners on Uniform State Laws that was established in 1892.

[11]     *See, e.g., Cooper Tire & Rubber Co. v. McCall*, 863 S.E.2d 81, 90 (Ga. 2021), *cert. denied*, 143 S. Ct. 2689 (2023) (concluding that its prior "general-jurisdiction holding in *Klein* does notify out-of-state corporations that their corporate registration will be treated as consent to general personal jurisdiction in **Georgia**"); *Espin v. Citibank, N.A.*, No. 5:22-cv-383, 2023 WL 6447231, at *3–4 (E.D. N.C. Sept. 29, 2023) (construing **North Carolina's** Supreme Court precedent and a registration statute that notes that foreign corporations are subject to the same privileges and duties as domestic corporations as together supporting general jurisdiction via registration); *Spanier v. Am. Pop Corn Co.*, No. C15-4071, 2016 WL 1465400, at *4 (N.D. Iowa Apr. 14, 2016) ("Accordingly, because [defendants] both maintain registered agents for service of process in **Iowa**, they have consented to jurisdiction here"); *Sondergard v. Miles, Inc.*, 985 F.2d 1389, 1394 (8th Cir. 1993) (holding that under **South Dakota's** registration statutes even when the claim was brought by a resident of Utah "a foreign corporation's authorized agent can be served even if the cause of action arose outside the state"); *Merriman v. Crompton Corp.*, 146 P.3d 162, 171 (Kansas 2006) ("Thus, a foreign corporation applying for authority to do business in **Kansas** under K.S.A.2005 Supp. 17–7301(b)(7) expressly consents to personal jurisdiction"); *Knowlton v. Allied Van Lines, Inc.*, 900 F.2d 1196, 1200 (8th Cir. 1990) (holding that under **Minnesota's** registration statutes a foreign corporation that has registered and appointed an agent for service of process has consented to general jurisdiction); *Budde v. Kentron Hawaii, Ltd.*, 565 F.2d 1145, 1149 (10th Cir. 1977) (suggesting that under **Colorado** law registration to do business in Colorado constituted consent to general jurisdiction). (Emphasis added to all).

[12]     *See, e.g., AssetWorks USA, Inc. v. Battelle Mem'l Inst.*, No. 1:23-cv-731, 2023 WL 7106878, at *2 (W.D. Tex. Oct. 23, 2023) (declining to apply *Mallory* noting its holding is "narrow" and that **Texas'** registration statute "neither mentions general jurisdiction nor mirrors the structure of the Pennsylvania statute" at issue in *Mallory*); *Rosenwald v. Kimberly Clark Corp.*, No. 3:22-cv-04993, 2023 WL 5211625, at *6 (N.D. Cal. Aug. 14, 2023) (acknowledging that "**California** does not require corporations to consent to general personal jurisdiction in that state when they designate an agent for service of process or register to do business") (cleaned up); *Basse v. Bank of Am., N.A.*, No. CV-22-03674, 2023 WL 2696627, at *7 (D.N.J. Mar. 29, 2023) (rejecting consent jurisdiction because **New Jersey's** foreign business registration statutes do not "explicitly provide that registering to conduct business in New Jersey constitutes express consent to general or specific jurisdiction"); *McDowell v. United Parcel Serv., Inc.*, No. 4:22-cv-4028, 2022 WL 17543352, at *4 (W.D. Ark. Dec. 8, 2022) (holding that "simply being registered in Arkansas does not render that defendant 'at home' in **Arkansas** such that it is subject to exercise of the Court's general personal jurisdiction"); *Chavez v. Bridgestone Americas Tire Operations,*

*LLC,* 503 P.3d 332, 344 (N.M. 2021) (overruling prior case law and concluding that **New Mexico's** registration statutes do not  support consent by registration); *Fidrych v. Marriott Intl., Inc.*, 952 F.3d 124, 137–38 (4th Cir. 2020) (holding that "**South Carolina** law does not make consent to general jurisdiction a consequence of obtaining a certificate of authority to transact business"); *Lanham v. BNSF Railway Co.*, 939 N.W.2d 363, 371, opinion modified on denial of reh'g, 944 N.W.2d 514 (Neb. 2020) (holding that foreign corporation's registration to transact business under **Nebraska** law "does not provide an independent basis for the exercise of general jurisdiction"); *Waite v. ALL Acquisition Corp.*, 901 F.3d 1307, 1320–21 (11th Cir. 2018) (holding that **Florida** law did not either expressly or by state-court construction establish that registration to do business and appointment of an agent for service of process in Florida amounted to consent to general personal jurisdiction); *DeLeon v. BNSF Railway Co.*, 426 P.3d 1, 7-9 (Mont. 2018) (holding that foreign corporation's registration in **Montana** did not equate to consent to general personal jurisdiction); *Bralich v. Sullivan*, No. 17-00547, 2018 WL 1938297, at *4 (D. Hawai'i Apr. 23, 2018) (concluding that there is no consent to general jurisdiction under **Hawaii** foreign corporation registration statutes); *Gulf Coast Bank & Trust Co. v. Designed Conveyor Sys., L.L.C.*, 717 F. App'x 394, 397–398 (5th Cir. 2017) (holding that "[t]his case lacks what *Pennsylvania Fire* had: a clear statement from the state court construing the statute to require consent," because in **Louisiana**, "[n]one of the statutes covering registration informs a company that by registering it consents to suit"); *Segregated Acct. of Ambac Assurance Corp. v. Countrywide Home Loans, Inc.*, 898 N.W.2d 70, 83 (Wis. 2017) ("[a]bsent express statutory language asserting general jurisdiction over a foreign corporation based on its appointment of an agent for service of process, we will not depart from the plain meaning of [**Wisconsin's** registration statute], which serves merely as a registration statute, not a conferral of consent to general jurisdiction"); *Aspen Am. Ins. Co. v. Interstate Warehousing, Inc.*, 90 N.E.3d 440, 447 (Ill. 2017) ("We hold, however, that in the absence of any language to the contrary, the fact that a foreign corporation has registered to do business under the Act does not mean that the corporation has thereby consented to general jurisdiction over all causes of action, including those that are completely unrelated to the corporation's activities in **Illinois**."); *Figueroa v. BNSF Ry. Co.*, 390 P.3d 1019, 1021 (Or. 2017) ("[T]he legislature did not intend that appointing a registered agent pursuant to [the **Oregon** registration statute] would constitute consent to the jurisdiction of the Oregon courts."); *Genuine Parts Co. v. Cepec*, 137 A.3d 123, 148 (Del. 2016) (holding that "we read [**Delaware's**] registration statutes as providing a means for service of process and not as conferring general jurisdiction"); *Manning v. PD-Rx Pharms. Inc.*, No. 5:15-CV-00566-R, 2016 WL 3094075, at *8 (W.D. Okla. June 1, 2016) (holding that where a foreign corporation's **Oklahoma** statutes are silent on consent to jurisdiction and the absence of direct authority from the Oklahoma courts, "the Court applies the Supreme Court's 'preferential construction' recognized by the Tenth Circuit and declines to exercise general jurisdiction over the Defendants on the basis of their registration in the state"). *See also Lumen Technologies Service Group, LLC v. CEC Group, LLC*, No 23-cv-253, 2023 WL 5822503, at *6–8 (D. Colo. Sept. 8, 2023) (distinguishing the Tenth Circuit's decision in *Budde* and concluding that because **Colorado's** statutes "do not expressly inform foreign corporations of any personal jurisdiction consequences of registering to do business," and because there is no "local authority providing notice to out-of-state entities that by registering to do business … those entities consent to Colorado personal jurisdiction" such registration does not give rise to general jurisdiction). (Emphasis added to all).

still in other cases, such as the *In re Abbott Labs* action, a court in one state has

determined there is consent even though the Supreme Court in the state that

enacted the registration statutes has held otherwise, albeit it later conceded that it

was error to have done so. *Compare In re Abbott Labs*, 2023 WL 4976182, at *3 and

*In re Abbott Labs*, 2023 WL 8527415, at *4–5, *with Dolan*, 512 S.W.3d at 52 & n.11

(all construing the same Missouri foreign corporation registration statutes).

Thus, the issue comes down to whether Utah has expressly required consent

to general jurisdiction in its registration statutes, or whether Utah has or should

interpret its foreign corporation registration statutes to imply such consent.

Indeed, the Supreme Court has noted that whether compliance with a registration

statute constitutes consent is a question of state law. *See Robert Mitchell Furniture

Co. v. Selden Breck Const. Co.*, 257 U.S. 213, 216 (1921) ("Unless the state law

either expressly or by local construction gives to the appointment a larger scope, we

should not construe it to extend to suits in respect of business transacted by the

foreign corporation elsewhere"); s*ee also King v. Am. Fam. Mut. Ins. Co.*, 632 F.3d

---

Some of these decisions relied, at least in part, on the view that a finding of general jurisdiction by virtue of registration might violate due process. *See, e.g.*, *Chavez*, 503 P.3d at 348 ("Considering the constitutional constraints involved, we conclude that it would be particularly inappropriate to infer a foreign corporation's consent to general personal jurisdiction in the absence of clear statutory language expressing a requirement of this consent."); *Lanham,* 939 N.W.2d at 371 ("We conclude that treating [defendant's] registration to do business in Nebraska as implied consent to personal jurisdiction would exceed the due process limits prescribed in *Goodyear Dunlop Tires Operations, S.A.* and *Daimler AG*."); *DeLeon*, 426 P.3d at 8–9 (concerned that "extending general personal jurisdiction over all foreign corporations that registered to do business in Montana … would extend our exercise of general personal jurisdiction beyond the narrow limits recently articulated by the Supreme Court"). After *Mallory*, and assuming the registration statutes are correctly interpreted as sufficient to establish consent, this due process concern may no longer be valid.

570, 575 (9th Cir. 2011) (acknowledging that "federal courts should look first and foremost to a state's construction of its own statute to determine whether appointment of an agent for service of process is a sufficient basis for the exercise of personal jurisdiction over a foreign corporation.").  And one of the few Utah decisions to address the consent-by-registration issue noted that "all the authorities agree that the state decisions on the question [of jurisdiction over a registered foreign corporation for actions arising out of state] are controlling, where there are no constitutional questions involved."  *See Gibbons & Reed Co. v. Standard Accident Ins. Co.*, 191 F. Supp. 174, 176 (D. Utah 1960) (citing *Robert Mitchell Furniture*).

### (b) Utah Law on Consent-By-Registration

#### <u>Statutory Law</u>

As is the case in almost all the foreign registration statutes nationwide, and unlike the Pennsylvania statute at issue in *Mallory*, there is no express language in Utah's registration statutes mentioning consent to general jurisdiction.  Instead, the Plaintiff relies on the following statutes relating to registration to imply consent to general jurisdiction:

- Utah Code Ann. § 16-10a-1501(1), which states that a "foreign corporation may not transact business in this state until its application for authority to transact business is filed ….";

- Utah Code Ann. § 16-10a-1503(1)(b), which requires the application to transact business to set forth the name and address of the corporation's registered agent within the state as required under Utah Code Ann. § 16-17-203;

- Utah Code Ann. § 16-17-301, which states that "[a] registered agent is … authorized to receive service of any process … required or permitted by law to be served on the entity"; and

- Utah Code Ann. § 16-10A-1505(2), recognizing that "[a] foreign corporation authorized to transact business in this state has the same rights and privileges, but no greater rights or privileges, than a domestic corporation of like character … [and] a foreign corporation authorized to transact business in this state is subject to the same duties, restrictions, penalties, and liabilities now or later imposed on a domestic corporation of like character."

Plaintiff's main argument is that this last provision, § 16-10a-1505(2), must be read as to establish consent because all domestic Utah corporations are subject to general jurisdiction and, through registration, a foreign corporation is subject to the same "duties" and "liabilities" as a domestic corporation, including general jurisdiction. Therefore, allowing a registered foreign corporation to avoid general jurisdiction would impermissibly grant a foreign corporation "greater rights and privileges" than a domestic corporation.

But unlike the statute at issue in *Mallory*, none of these Utah statutes expressly inform a foreign corporation, such as DHL, that it will be subject to general jurisdiction if it registers to do business in Utah. Because they do not do so, they cannot serve to establish DHL's consent to general jurisdiction in Utah. *See Robert Mitchell*, 257 U.S. at 216 (stating that "[u]nless the state law either expressly or by local construction gives to the appointment a larger scope, we should not construe it to extend to suits in respect of business transacted by the foreign corporation elsewhere"); *see also Fidrych v. Marriott Int'l, Inc.*, 952 F.3d 124, 137 (4th Cir. 2020) ("Under the rules set out in *Pennsylvania Fire* and *Robert Mitchell Furniture*, obtaining the necessary certification to conduct business in a given state amounts to consent to general jurisdiction in that state only if that condition is

- 24 -

explicit in the statute or the state courts have interpreted the statute as imposing that condition."); *Lumen Technologies*, 2023 WL 5822503, at *6–8 (concluding no general jurisdiction over foreign registered corporation where statutes did not expressly inform registrant of the jurisdictional consequences of registering).  *Cf. Mallory*, 600 U.S. at 134 (finding consent by registration jurisdiction where Pennsylvania's registration statutes expressly acknowledged and informed the registering entity that it would be subject to "general personal jurisdiction" in Pennsylvania).

> ### Case Law

There are no controlling Utah Supreme Court opinions addressing the issue of consent jurisdiction under Utah's current foreign corporation registration regime. In arguing for consent jurisdiction, Plaintiff relies on a Utah federal district court decision issued by Judge Christensen in 1960.  In that case, *Gibbons & Reed Co. v. Standard Acc. Ins. Co.*, 191 F. Supp. 174 (D. Utah 1960), Judge Christensen was analyzing whether, under a consent-by-registration theory, the court had jurisdiction over a registered foreign insurance company in an action brought by a Utah citizen for a claim that arose outside of Utah.  In concluding that there was jurisdiction, Judge Christensen reasoned that it was "neither reasonable nor consistent that while domestic insurance companies may be freely sued by non-residents in the courts of Utah on claims arising outside the state, foreign insurance companies authorized to do business and maintaining process agents here, are not subject to similar suits even by citizens of this state."  *Id.* at 180.

In *Gibbons,* Judge Christensen also relied on the Utah Constitution, which at the time stated that "No corporations organized outside of this State, shall be allowed to transact business within the State on conditions more favorable than those prescribed by law to similar corporations organized under the laws of this State." *See id.* at 179 (*citing* Utah Constitution Art. XII, Sec. 6).  Citing this provision, he noted that protecting an out-of-state defendant "from suits based upon foreign claims or causes of action" might be of dubious constitutionality.  *Id.* at 179.  In doing so Judge Christensen cited cases from Arizona and Arkansas holding that such provisions had been interpreted to only permit actions brought by residents of the state or based on liabilities arising from business or conduct in the state.  *Id.* at 179 (citing cases).

While the Utah constitutional provision Judge Christensen referenced was repealed in 1993, similar language now appears in the registration statutes.  Specifically, Utah Code Ann. § 16-10A-1505(2) provides that "[a] foreign corporation authorized to transact business in this state has the same rights and privileges, but no greater rights or privileges, than a domestic corporation of like character … [and] a foreign corporation authorized to transact business in this state is subject to the same duties, restrictions, penalties, and liabilities now or later imposed on a domestic corporation of like character."  Arguably, given the construction that Judge Christensen put on the Utah Constitution's version of this provision, and consistent with his holding in *Gibbons*, he would have construed the current statute as limiting jurisdiction over registered foreign corporations to actions involving

claims by resident plaintiffs or claims arising from conduct within the state. *See Gibbons*, 191 F. Supp. at 179.[13]

Notably, *Gibbons* is factually distinct from the issue now before this Court. Unlike the potential out-of-state opt-in plaintiffs here, the plaintiff in *Gibbons* was a citizen of Utah. *Id.* at 178. In her briefs, the Plaintiff ignores that distinction, even going so far as to omit a reference to suits "by citizens of this state" from a quote she cites. [*See* ECF No. 45 at 6.] In *Gibbons*, Judge Christensen found this residency detail to be important. In fact, he correctly recognized that "[s]ome of the cases turn on the question of whether the plaintiff … is a citizen of the forum." *Id.* at 178 (citing *Travelers Fire Ins. Co. v. Rannay-Davis Mercantile Co.*, 173 F.2d 844 (10th Cir. 1949) (confirming that doing business jurisdiction under Kansas's statutes requires either that the plaintiff be a resident of the state or that the cause must have arisen in the state). Thus, it appears that *Gibbons* may have turned on the

---

[13]     Other courts, however, have concluded that similar language supports consent jurisdiction over a foreign corporation even for out-of-state claims. *See, e.g., Rykoff-Sexton, Inc. v. Am. Appraisal Assocs., Inc.*, 469 N.W.2d 88, 90 (Minn. 1991) (acknowledging that Minn. Stat. Ann. § 303.09 (1990), which provides that a foreign corporation "operating under a certificate of authority possesses the same rights and privileges as a domestic corporation, and is subject to the laws of this state," supports consent to general jurisdiction over registered foreign corporations); *see also Espin v. Citibank, N.A.*, 2023 WL 6447231, at *4 (citing *In re Abbott Labs* and concluding that such language coupled with North Carolina Supreme Court precedent supports general jurisdiction via registration). *But see Chavez*, 503 P.3d at 346–47 (recognizing that while this statutory language "expresses a legislative intent to equalize domestic and foreign corporations," consent-by-registration jurisdiction is not necessary to effect its purpose because the state's long-arm jurisdiction ensures that New Mexico's courts may "enforce a foreign corporation's forum related obligations," and because the registration statutes do not "express an intent to require consent by registration"); *DeLeon*, 426 P.3d at 7–9 (failing to even cite that same Montana privileges and duties statute in determining that registration does not amount to jurisdiction).

fact the plaintiff was a Utah citizen, which is not the case with the potential out-of-state opt-in plaintiffs here.

Plaintiff also points out that Judge Christensen noted that his decision "confirms the basic doctrine already adhered to by the Utah Supreme Court that foreign and domestic corporations in general are alike subject to suits within this state upon claims or causes of action arising outside of the state." *Id*. at 179. On this point, Judge Christensen was expressly referring to the 1910 Utah Supreme Court decision in *Bristol v. Brent*, 110 P. 356 (Utah 1910). *See Gibbons*, 191 F. Supp. at 176. Judge Christensen apparently read *Bristol* to hold that, insofar as a foreign insurance company is concerned, there is no Utah policy that would preclude suits against it for claims arising outside the state. *Id.* at 176.

However, *Bristol* isn't quite as clear on this point as Judge Christensen indicated. *Bristol* concerned the question of whether the court had personal jurisdiction over a garnishee and the debt he owed, with no party being a citizen of Utah and none of the acts, save for service of process, occurring in Utah.

As an initial matter, *Bristol* did not concern the application of any registration to transact business statute: there was no such requirement at the time. Utah instead had a statute that provided that if a foreign corporation "has, or advertises, or holds itself out as having an office or place of business in this state, or does business in the state," then service could be made on the person doing such business or in charge of such office. *Id.* at 358, 360. A voluntary registration to transact business was not required; all that was required was that the defendant

transact some business or have some office in the state.  The garnishee had such an office in Utah and a Mr. Warren was employed in that office as the garnishee's "general agent."  *Id.* at 360.  That was enough for jurisdiction.  *Id.*

But grounding general jurisdiction over a non-resident defendant for a claim arising wholly outside the state on the basis that the defendant was doing any business or soliciting any business in the state, regardless of the scope of such business, is not constitutional and has not been for many, many decades.  *See Int'l Shoe Co. v. State of Washington*, 326 U.S. 310, 320 (1945) (recognizing jurisdiction over a foreign corporation where the corporation's activities in the state were "systematic and continuous" and the obligation sued upon "arose out of those very activities").  In fact, the United States Supreme Court made it clear as early as 1915 that, while "every state has the undoubted right to provide for service of process upon any foreign corporations doing business therein; … this power to designate by statute the officer upon whom service in suits against foreign corporations may be made relates to business and transactions ***within the jurisdiction*** of the state enacting the law."  *Simon v. Southern Railway Co.*, 236 U.S. 115, 130 (1915) (cleaned up) (emphasis added); *see also Old Wayne Mut. Life Ass'n of Indianapolis*, 204 U.S. 8, 21 (1907) (noting that even assuming that the company "engaged in ***some*** business in Pennsylvania … it cannot be held that the company agreed to service of process upon the insurance commissioner of that commonwealth would alone be sufficient to bring it into court in respect of ***all*** business transacted by it,

no matter where, with, or for the benefit of, citizens of Pennsylvania") (emphasis in original).[14]

In sum, *Bristol* did not address the consent-by-registration issue and its viability as to jurisdiction over a non-resident defendant for claims arising from conduct outside of Utah had long been overruled.  Thus, Judge Christensen's reliance on *Bristol* may have been misplaced.

In arguing that Utah law supports a consent-by-registration theory, Plaintiff also cites to the Utah Supreme Court's opinion in *Apache Tank Lines, Inc. v. Beall Pipe & Tank Corp.*, 19 Utah 2d 104 (1967).  In *Apache Tank*, the court had to decide whether a defendant, which had been but was no longer authorized to transact business in Utah, was subject to general jurisdiction for a claim that arose outside Utah that was brought by an out-of-state plaintiff.  *Id*. at 105–06.  The court affirmed that it did not have general jurisdiction over the defendant.  The court noted that defendant no longer transacted business in Utah: its certificate of authority had already been revoked and the corporation no longer carried on any activities in Utah. *Id*. at 106. Thus, there was no consent-by-registration jurisdiction. Apparently, Plaintiff cited this case because of *dicta* stating that, "the defendant would be subject to the jurisdiction of Utah courts for any liabilities it

---

[14]      In *Travelers Fire Ins. Co. v. Ranney-Davis Mercantile Co.*, 173 F.2d 844 (10th Cir. 1949), the court discussed the *Old Wayne* and *Simon* decisions and noted that both barred jurisdiction with respect to claims arising outside the state.  *Id*. at 848.  Citing *Pennsylvania Fire*, the court noted, however, that when a foreign company makes a voluntary appointment of an agent, not one imposed by statute, "it takes the risk of the construction that will be put upon the statute and the scope of the agency by the State Court."  *Id*.

may have incurred during the time it was in good standing in the state of Utah or during such time it was actually engaged in business within the State." *Id.* at 106. This is, arguably, a thin reed to rely upon, particularly as it is not clear if the court was including or excluding conduct that arose outside the state.

Since *Gibbons*, the only two Utah-related cases to expressly address a consent-by-registration general jurisdiction argument have rejected it. In *Oversen v. Kelle's Transport Service, Inc.*, No. 2:15-cv-535, 2016 WL 8711343 (D. Utah May 12, 2016), this Court was faced with the question of whether the court had jurisdiction over the claim of an Arizona plaintiff for an automobile accident that occurred in California and involved a Ford pickup truck that was manufactured in Kentucky and sold in Washington. Citing Utah's foreign company registration statutes, plaintiff claimed that the court had general jurisdiction over Ford, in part, because Ford "consented to jurisdiction" by registering to transact business in Utah and appointing an agent for service of process. *Id.* at *2–3.

This Court rejected this argument. First, it noted that the Utah Supreme Court has never interpreted the foreign registration statutes to support consent by registration. *Id.* at *3. Second, it found that there was nothing in the actual language of the Utah statutes that addressed consent to general jurisdiction:

> That language provides only that a foreign corporation must appoint an agent to accept service. Nothing in the text suggests that such an act will give rise to general personal jurisdiction ….

*Id.* The Court further noted that interpreting the registration statutes as consent to general jurisdiction might raise "constitutional issues"—issues that the plaintiff

had not addressed.  *Id.* (citing *Brown v. Lockheed Martin Corp.*, 814 F.3d 619, 641 (2d Cir. 2016) (noting that state's ability to require consent by registration might be limited by the 14th Amendment)).  The Court, however, did not cite G*ibbons* or *Bristol*, and it did not cite Utah Code § 16-17-401.

More recently, Judge Stewart reached the same conclusion in *Mountain Run Solutions, LLC v. Capital Link Management, LLC*, No. 2:22-cv-526, 2022 WL 17324226 (D. Utah Nov. 29, 2022).  The plaintiff, a Utah LLC, had argued that the court had both specific and general jurisdiction over the defendant, a New York LLC.   Judge Stewart rejected both arguments.  *Id.* at *2–3.  As to general jurisdiction, although Judge Stewart noted that the defendant had been registered to transact business in Utah since 2018, such registration was not enough.  *Id.* at *3.  Citing *Oversen*, Judge Stewart noted that finding general jurisdiction based on registration "would essentially create an 'all-purpose jurisdiction that would scarcely permit out-of-state defendants to structure their primary conduct with some minimum assurance as to where that conduct will and will not render them liable to suit.'"  *Id.* at *3 (cleaned up) (quoting *Daimler*, 571 U.S. at 139).  But Judge Stewart did not analyze the statutory text of Utah's foreign registration statutes and did not cite Utah Code § 16-17-401 (or any other registration-related statutes).  Nor did he cite the *Gibbons* decision, which seemed directly on point as it too involved a Utah plaintiff.

*State Policy Interests*

It appears that limiting the reach of jurisdiction under Utah's foreign corporation registration statutes only to actions concerning Utah residents or acts occurring in Utah—which was the determination in *Gibbons*—is consistent with the policy of Utah.

Utah's Legislature has confirmed that its main concern is that its citizens are protected when it comes to the acts of non-residents, not that non-residents may be hauled into court in Utah to answer for claims brought by other non-residents. This was made evident in § 78B-3-201 of the Utah Code, which is known as Utah's "Nonresident Jurisdiction Act"—*i.e.*, Utah's long-arm jurisdiction statute. There, the Utah Legislature expressly declared "as a matter of legislative policy, that the public interest demands the state provide ***its citizens*** with an effective means of redress against nonresident persons." *See* § 78B-3-201(2) (emphasis added). The statute goes on to state that "[t]he provisions of this part, ***to ensure maximum protection to the citizens of this state***, should be applied to assert jurisdiction over nonresident defendants to the fullest extent permitted by the [D]ue [P]rocess [C]lause …." *See* § 78B-3-201(3) (emphasis added).

And in *Wabash Railroad Co. v. District Court of Third Jud. Dist.*, 109 Utah 526 (1946), the Utah Supreme Court confirmed that the protection of residents from the actions of non-residents was of paramount importance to the State. That case concerned a claim brought by a Utah turkey growers association against the Wabash Railroad, an Ohio corporation, for a loss that took place east of Chicago on

Wabash's railway lines.  *Id.* at 528.  While Wabash had not registered to do business in Utah, it maintained an office in the state and there were agents in that office who handled claims for losses.  *Id*. at 529.  In finding jurisdiction over Wabash, the court noted that:

> When a resident of the forum suffers a loss, and a foreign corporation which is alleged to be liable therefor, is present in the forum by solicitation of the kind and character of business out of which the loss arose, it would be an undue burden on the one suffering the loss to be compelled to go into some other state to bring an action when the transaction out of which the loss arose was one solicited in the state where the plaintiff resides. To have redress a shipper must have access to the courts.

*Id.* at 537.

The *Wabash* and *Gibbons* decisions, along with the statutory provisions cited above, reflect that Utah's concern about jurisdiction over non-residents, including foreign corporations, is focused on claims involving Utah residents.  Utah's foreign corporation registration statutes say nothing about consenting to general jurisdiction or jurisdiction over claims brought by a non-resident against another non-resident arising outside of Utah.  Absent such a statutory command, and given the express policy language discussed above, to the extent that any implied consent to jurisdiction could be read into the registration statutes, these authorities suggest that any such consent should be limited to actions in which a Utah resident has a claim, and not actions, like the FLSA action presented against DHL for conduct that occurred in Ohio, Arizona, and places other than Utah, that did not involve Utah residents.

It must be noted that some of the decisions that have interpreted registration statutes to confer consent over out-of-state claims have relied on a contrast between the allowable service on a registered foreign corporation and a withdrawn foreign corporation.  *See, e.g., Knowlton v. Allied Van Lines, Inc.*, 900 F.2d 1196 (8th Cir. 1990).  For example, in *Knowlton,* the court acknowledged that "[t]he whole purpose of requiring designation of an agent for service is to make a nonresident suable in the local courts."  *Id.* at 1199.  It noted that while states can limit this designation "to claims arising out of in-state activities, and some statutes are so limited," the Minnesota statutes it was interpreting contained no such limitation.  *Id.*  To support this conclusion the court noted that the Minnesota statute provides simply that "[a] foreign corporation shall be subject to service of process ... [b]y service on its registered agent...."  *Id.* (citing Minn. Stat. Ann. § 303.13 (1)).

The court then noted that there was no language in the statute that limited service to claims arising out of activities within the state.  By contrast, however, it noted that a different subsection of the registration statute—one that addressed previously registered foreign corporations that had withdrawn from the state— limited service on such foreign corporations only to actions "based upon a liability or obligation of the corporation incurred within the state or arising out of any business done in this state" prior to its withdrawal.  *Id.* (quoting Minn. Stat. Ann § 303.13 (2)).  According to the court, the inclusion of this limitation in one section of the registration statutes but not the other, indicated that the "Legislature knew how to limit the purposes of service of process when it wanted to do so, and that the

provisions for service without such an express limitation are intended to apply to any claims made against a corporation with a registered agent in the state." *Id.* According to the *Knowlton* court, this different treatment supported its conclusion that an appointment of an agent for service of process by an active registered foreign corporation amounted to consent to jurisdiction "for any cause of action, whether or not arising out of activities within the state." *Id.* at 1200.

Notably, Utah's statutory registration scheme is different. Utah statutes require a registered foreign corporation to appoint a registered agent who is "authorized to receive service of any process … required or permitted by law to be served on the entity." *See* Utah Code Ann. §§ 16-10a-1503(1)(b), 16-10a-1511(2), 16-17-203, 16-17-301. Service may be made on a registered foreign corporation by serving its registered agent by first class-mail. *See id.* § 16-10a-1511(1). But if a foreign corporation has withdrawn from Utah, it may still be served, either by serving its registered agent, if it continued to authorize the agent, "in any proceeding based on a cause of action arising during the time it was authorized to transact business in this state," or by serving the corporation directly by registered or certified mail "in connection with any cause of action." Utah Code Ann. 16-10a-1521(1)(a), (b). Thus, in contrast to the Minnesota statutes construed in *Knowlton,* Utah does not have two levels of service:  one broad and one limited to actions based upon liabilities "incurred within the state or arising out of business done in this state." *See Knowlton*, 900 F.2d at 1199 (quoting Minn. Stat. Ann. § 303.13(2)).

In addition, as noted above, Utah's statutory registration scheme also includes § 16-17-401, which provides that the appointment of a registered agent "does not by itself create the basis for personal jurisdiction over the represented entity in this state." As *Knowlton* based its determination that there was consent jurisdiction on the foreign corporation's "appointment of an agent," it appears that Utah's enactment of § 16-17-401, which precludes such an appointment from establishing jurisdiction, would mandate a different result under Utah law.

### (c) Utah Code § 16-17-401 and Protection from General Jurisdiction

Section 16-17-401, which is part of Utah's Model Registered Agents Act, establishes that "[t]he appointment or maintenance in this state of a registered agent does not by itself create the basis for personal jurisdiction over the represented entity in this state …." As noted above, several courts, including one post-*Mallory*, have determined that this provision precludes registration-based general jurisdiction. *See K&C Logistics,* 374 So.3d at 524; *DeLeon*, 426 P.3d at 7; *Wise*, 2019 WL 3769624, at *2; *Bralich*, 2018 WL 1938297, at *4; *McDowell*, 2022 WL 17543352, at *4.

As noted above, Utah's registration statutes require that any foreign corporation registered to transact business in Utah must also have a "registered agent" within the state. *See* Utah Code. Ann. § 16-10a-1503(1)(b). A registered foreign corporation is then plainly and unequivocally informed that its "**appointment … of a registered agent does not by itself create the basis for personal jurisdiction** …." Utah Code Ann. § 16-17-401 (emphasis added). Read

together, no foreign corporation registered in Utah would understand that its registration, which requires an agent's appointment, would be deemed consent to jurisdiction. In fact, these statutes make clear that it was the Utah Legislature's intent that there is no general jurisdiction over a foreign corporation simply by virtue of its registration. *See, e.g., K&C Logistics*, 374 So.3d at 524 (reviewing identical Mississippi statutes and concluding that because the "very action that is required of a foreign corporation to obtain a business certificate—the appointment and maintenance of an agent for service of process" prohibits a finding of jurisdiction, it is clear that these foreign registration statutes were "not intended to confer general personal jurisdiction through business registration statutes"); *DeLeon,* 426 P.3d at 7 (analyzing virtually indistinguishable Montana statutes stating that "[n]othing puts a corporation on notice that, by appointing a registered agent to receive service of process in Montana, it is consenting to general personal jurisdiction in Montana.").

### (d) Making Sense of Consent-by-Registration Jurisdiction Under Utah Law

There is no controlling Utah decision that has conclusively interpreted Utah's foreign corporation registration statutes to support consent-by-registration jurisdiction. Nor do any of Utah's registration statutes expressly include a consent to general jurisdiction, as the Pennsylvania statute at issue in *Mallory* did. Therefore, even under *Mallory*, because Utah's foreign registration statutes do not have any express consent language and have not been construed to establish consent to general jurisdiction, there is no general jurisdiction over a registered

foreign corporation such as DHL—a position on which many courts agree.  *See*

*supra* n.12 (citing cases).

This view is bolstered by the enactment of § 16-17-401 of the Utah Code,

which provides that "appointment or maintenance in this state of a registered agent

does not by itself create the basis for personal jurisdiction over the represented

entity in this state."  Although no Utah court has interpreted this provision, its

plain language indicates that it does bar consent-by-registration jurisdiction.  This

result is consistent with the holdings from the other jurisdictions that have

considered comparable statutory provisions.  *See, e.g., K&C Logistics,* 374 So.3d at

524 (holding post-*Mallory* that such a statute precludes finding general jurisdiction

through registration); *see also supra* at 1.C.2.(a) & n.8.   And although there are

many courts, pre- and post-*Mallory*, that have reviewed registration statutes like

Utah's and concluded that they provide for consent (*see supra* n.11 (citing cases)),

the Court believes that such a conclusion stretches *Mallory* too far.  To read *Mallory*

more broadly would not only go beyond the decision's scope but would also subject

every registered foreign corporation, without regard to its place of incorporation, its

principal place of business, or the extent of its contacts within the state, to general

personal jurisdiction in almost every single state.  Nothing in *Mallory* suggests that

the Court was announcing such a sweeping sea change in personal jurisdiction.

Judicial discretion also counsels in favor of this conclusion.  Given the

absence of a Utah Supreme Court opinion resolving the issue or express statutory

language establishing general jurisdiction by virtue of registration, the question of

whether it is reasonable or fair, or good (or bad) policy to mandate general jurisdiction through Utah's foreign corporation registration statutes is a question for Utah's Legislature.

Therefore, based on the current record, the Court concludes that there is no support under Utah law for a determination that DHL has impliedly or expressly consented to general jurisdiction by virtue of registering to transact business in Utah. Accordingly, this Court lacks general jurisdiction over DHL insofar as it concerns the FLSA claims of any potential out-of-state opt-in plaintiffs. As discussed above (*see supra* at 1.B.), because Plaintiff has substantially alleged that drivers employed by Sidwell in Utah as courier drivers for DHL are similarly situated, and because there is specific jurisdiction over DHL for its conduct in Utah (*see supra 1.C.1*) and general jurisdiction over Sidwell, the Court will grant conditional certification for potential opt-in plaintiffs who were employed by Sidwell in Utah as against DHL and Sidwell. Relatedly, because the Court has general jurisdiction over Sidwell even for claims arising outside of Utah (*see supra* 1.C.), the Court will also grant conditional certification for potential opt-in plaintiffs who were employed by Sidwell in Oregon as courier drivers for DHL. But because the Court does not have jurisdiction over DHL for conduct in Oregon, this certification only covers claims against Sidwell.

## 2. *Notice of Conditional Certification*

The Plaintiff's Motion also seeks approval of a "Proposed Notice" to be sent to potential opt-in plaintiffs. Defendants object to the Proposed Notice because they

have not been consulted on its "form, substance, or method of notice." [*See* ECF No. 31 at 17–20.]  Defendants cite several authorities supporting the view that the parties should first confer before submitting a notice to the court for approval.  In fact, that was the very approach taken in the *Roberts* action from the Western District of Washington that is nearly identical to this action.  In *Roberts* the court ordered the parties to meet and confer on an agreed to form of notice.  And if the parties were unable to agree, the court ordered them to submit a report explaining their disagreements.  *See Roberts*, 2022 WL 16949565, at *9.  The same approach is warranted here.

### 3.  *Standing*

The final issue raised by Defendants in opposition to Plaintiff's Motion is one of standing.  DHL argues that because DHL was not Plaintiff's employer—Sidwell was her direct employer—Plaintiff lacks standing to bring a collective action against DHL.  (Of course, Plaintiff has standing as to claims against Sidwell.)

DHL notes that Plaintiff signed an agreement that acknowledged that she was an employee for Sidwell.  She also acknowledged that "I understand I do not work for DHL Express and I will not receive any information on my employment status including work assignment, pay checks, benefits, nor hours worked from DHL Express and its assigned benefit." [ECF No. 31-1 at 3.]  Absent any employer/employee relationship, DHL argues that Plaintiff cannot bring a FLSA action against it.  *See* 29 U.S.C. § 203(e)(1).  In response, Plaintiff asserts that she has adequately alleged that DHL and Sidwell are "joint employers," and that

because discovery has not been conducted it is too early to determine whether DHL and Sidwell are, in fact, joint employers.

There are many cases in which courts within the Tenth Circuit and elsewhere have granted conditional certification based on allegations of joint employer status like those alleged here.  Among these is *Green v. Perry's Restaurants Ltd*, No. 21-cv-0023, 2022 WL 16744795, at *4 (D. Colo. Nov. 7, 2022), in which the court recognized that determining employer status under the FLSA "is a merits inquiry and far beyond the typical requirement at the conditional certification phase." *See also Scott v. Antero Res. Corp.*, No. 17-cv-0693, 2018 WL 11246698, at *2 (D. Colo. Feb. 26, 2018) (holding that early evaluation of joint employer "does not comply with the Tenth Circuit's conditional certification standard.").  Further the Tenth Circuit has itself acknowledged that a determination of which entity is an "employer" is not "limited by any contractual terminology or by traditional common law concepts of 'employee' or 'independent contractor,'" but instead requires examination of the "economic realities of the relationship."  *See Henderson v. Inter–Chem Coal Co.,* 41 F.3d 567, 570 (10th Cir. 1994).

And finally, the court in *Roberts*, faced with the very same parties and arguments, and the very same employment acknowledgement, concluded that it was "too early in this litigation to make a final determination on whether DHL and Sidwell acted as joint employers." *Roberts*, 2022 WL 16949565 at *7.  Just as in *Roberts*, the Plaintiff here has plausibly alleged joint employer status by alleging that courier drivers had to wear DHL clothing, drive DHL-branded trucks, had to

follow DHL's policies, and had to use DHL equipment that allowed DHL to contact them and monitor their work.  [*See* ECF No. 2 at ¶¶ 27, 39, 41, 44–45]; *Roberts*, 2022 WL 16949565, at *7.  Thus, the standing issue does not preclude conditional certification.  Defendants will be able to renew any standing objection following discovery.

CONCLUSION

Accordingly, based on the foregoing,

IT IS ORDERED that Plaintiff's Motion [ECF 29] is GRANTED IN PART. The Court grants conditional certification for all potential opt-in plaintiffs who were employed by Sidwell in Utah as against both Sidwell and DHL.  The Court also grants conditional certification for all potential opt-in plaintiffs who were employed by Sidwell in Oregon as against Sidwell; and

IT IS FURTHER ORDERED that the parties are directed to meet and confer regarding the form, content, and substance of notice that will be sent, to whom it will be sent, and the method by which it will be sent.  The parties must do so within 14 days of this Decision and Order.  If the parties agree, a stipulated form of notice is to be filed with the Court within 21 days of this Decision and Order.  In the event the parties cannot agree upon a stipulated form of notice, each party must file a report with the Court within 21 days of this Decision and Order identifying any areas of disagreement, a proposed resolution, and citing any applicable precedent. Such reports are limited to 10 pages.

DATED this 18th day of March 2024.

BY THE COURT:

Hon. Jill N. Parrish
United States District Judge